IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

UNITED STATES OF AMERICA,

Plaintiff,

v.

TAFT BURTTON,

Defendant.

**8:23CR28**

**MEMORANDUM
AND ORDER**

This matter is before the Court on defendant Taft Burtton's ("Burtton") *pro se* Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Filing No. 153). Also pending before the Court are Burtton's Motion for Evidentiary Hearing and for Appointment of Counsel (Filing No. 163), Motion for Limited Discovery pursuant to Rule 6, Rules Governing Section 2255 Proceedings (Filing No. 164), Motion for Leave to Proceed In Forma Pauperis (Filing No. 165), and Motion to Preserve and Produce Courtroom Recording for January 3, 2025, Sentencing Proceeding (Filing No. 167). The government opposes Burtton's § 2255 motion (Filing No. 159).

For the reasons below, Burtton's motions are all denied without an evidentiary hearing. *See*, *e.g.*, *Love v. United States*, 949 F.3d 406, 411 (8th Cir. 2020) ("A § 2255 motion can be dismissed without a hearing if (1) the petitioner's allegations, accepted as true, would not entitle the petitioner to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." (quoting *Ford v. United States*, 917 F.3d 1015, 1026 (8th Cir. 2019))).

## I. BACKGROUND

On October 4, 2024, Burtton waived indictment (Filing No. 96) and was arraigned on an information (Filing No. 94) charging him with conspiring "to distribute 10 grams or

more of a mixture or substance containing an analogue of fentanyl," in violation of 21 U.S.C. § 846.  Burtton knowingly and voluntarily pleaded guilty pursuant to a written plea agreement (Filing No. 98) after an extensive plea colloquy.  *See* Fed. R. Crim. P. 11.  In his plea agreement, Burtton and the government agreed he "should be held responsible, beyond a reasonable doubt, for at least 70 grams, but not more than 100 grams of fentanyl analogue."

At sentencing, the Court granted the government's motion to dismiss the Indictment (Filing No. 13) and Superseding Indictment (Filing No. 20) as to Burtton.  After hearing from the parties, the Court sentenced Burtton to the mandatory-minimum of 120 months in prison, to be followed by 8 years of supervised release.  *See* 21 U.S.C. §§ 846, 851.  It was the sentence he requested.  During his allocution, Burtton personally thanked the prosecutor for not asking for more.

In line with his plea agreement, Burtton did not appeal his conviction or sentence. He is serving his sentence at FCI Atlanta.  His projected release date is April 21, 2031.

On June 11, 2025, Burtton moved post-sentencing to amend his revised presentence investigation report (Filing No. 120), seeking the deletion of certain factual statements about his criminal history that were impacting his custody classification and program eligibility within the Bureau of Prisons (Filing No. 148).  *See* Fed. R. Crim. P. 36.  The Court denied the motion, concluding it was untimely (Filing No. 151).

Burtton now seeks to vacate his sentence under § 2255.  He first argues his retained counsel, Michael J. Tasset ("Tasset"), was ineffective, particularly with respect to his plea agreement.  He next argues that prosecutorial misconduct deprived him of due process and tainted the plea proceedings.  He also seeks discovery, an evidentiary hearing, the appointment of counsel, and other relief.

2

## II.    DISCUSSION

### A.    Legal Standard

"Under 28 U.S.C. § 2255 a defendant in federal custody may seek post conviction relief on the ground that his sentence was imposed in the absence of jurisdiction or in violation of the Constitution or laws of the United States, was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." *Watson v. United States*, 493 F.3d 960, 963 (8th Cir. 2007); 28 U.S.C. § 2255. Section 2255 "does not encompass all claimed errors in conviction and sentencing." *Sun Bear v. United States*, 644 F.3d 700, 704 (8th Cir. 2011) (en banc) (quoting *United States v. Addonizio*, 442 U.S. 178, 185 (1979)).

Errors of law do "not provide a basis for collateral attack unless the claimed error constituted 'a fundamental defect which inherently results in a complete miscarriage of justice.'" *Addonizio*, 442 U.S. at 185 (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)). "Similar limitations apply with respect to claimed errors of fact." *Id.*; *see also United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996) ("Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and, if uncorrected, would result in a complete miscarriage of justice.").

### B.    In Forma Pauperis and Discovery

Burtton moves for leave to proceed in forma pauperis, stating he "is unable to pay the filing fee or other costs associated with this proceeding without undue hardship." In support, he has attached a copy of his prisoner-trust statement (Filing No. 166).

That motion is denied without prejudice. There is no fee for filing a § 2255 motion so Burtton need not pay anything to maintain this action. *See* Rule 3, Advisory Committee Notes of the Rules Governing Section 2255 Proceedings in the United States District

Courts. And to this point, Burtton has not identified any other fees or costs he might reasonably incur.[1]

The Court likewise denies his discovery motions in this case. Unlike the usual civil litigant, a prisoner challenging his conviction under § 2255 "is not entitled to discovery as a matter of ordinary course." *Newton v. Kemna*, 354 F.3d 776, 783 (8th Cir. 2004) (quoting *Bracy v. Gramley*, 520 U.S. 899, 994 (1997)). As Bartton points out, Rule 6(a) of the Rules Governing Section 2255 Cases in the United States District Courts does authorize the Court to allow discovery "for good cause." The Court can also order the delivery of transcripts at the government's expense if the case "is not frivolous and [] the transcript is needed to decide the issue presented by the suit or appeal." 28 U.S.C. § 753; *see also* 28 U.S.C. § 2250; *United States v. MacCollom*, 426 U.S. 317, 325 (1976) (explaining that transcripts can be provided in qualifying § 2255 cases); *Green v. United States*, 262 F.3d 715, 716 (8th Cir. 2001) (same).

Burtton has not shown good cause or a compelling need for his requested discovery, especially at this late stage. His list is long, his justification short. He asks for a wide range of discovery, including grand-jury materials, confidential communications, and documents he already has.

As a practical matter, his discovery requests also come too late—accompanying his detailed reply (Filing No. 168) to the government's brief response to his motion (Filing No. 159). Although the Court can envision a government response that plausibly requires targeted discovery to enable a prisoner to fairly present his grounds for relief, that is not the case here. Just five pages long, the government's brief generally does not rely on new information or raise new issues. It depends almost entirely on Tasset's affidavit and Burtton's own statements. With just a few exceptions, Burtton and Tasset agree on the underlying facts while disagreeing about the impact of those facts. Where they do disagree,

---

[1]The Court remains mindful of his financial status as it relates to his request for appointed counsel and discovery.

their differences are immaterial to the outcome given the substantial burden Burtton faces to prove his ineffective-assistance claims. *See DeRoo v. United States*, 223 F.3d 919, 925 (8th Cir. 2000).

### C.    Appointment of Counsel

Burtton has no constitutional or statutory right to counsel to assist him with his § 2255 motion. *See Garza v. Idaho*, 586 U.S. 232, 245 (2019); *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987) (clarifying "that the right to appointed counsel extends to the first appeal of right, and no further"); *Baker v. United States*, 334 F.2d 444, 447 (8th Cir. 1964) (explaining that a federal prisoner "filing a motion under § 2255 is not entitled, as a matter of constitutional right, to have court-appointed counsel in the preparation and presentation of such a motion"). The Court can, however, appoint counsel if it "determines that the interests of justice so require," 18 U.S.C. § 3006A(a)(2)(B); *see also* 28 U.S.C. § 2255(g), and must appoint counsel if it holds an evidentiary hearing, *see* Rule 8(c), Rules Governing Section 2255 Cases in the United States District Courts; *Hoggard v. Purkett*, 29 F.3d 469, 471 (8th Cir. 1994) ("The appointment of counsel is discretionary when no evidentiary hearing is necessary.").

In deciding whether to appoint counsel, the Court considers "the legal complexity of the case, the factual complexity of the case, and the petitioner's ability to investigate and present his claims, along with any other relevant factors." *Hoggard*, 29 F.3d at 471. "If the petitioner has presented only claims that are frivolous or clearly without merit, the district court should dismiss the case on the merits without appointing counsel." *Abdullah v. Norris*, 18 F.3d 571, 573 (8th Cir. 1994).

Applying these standards to Burtton's motion, the Court sees no compelling reason to appoint counsel at this time. Burtton's claims of ineffective assistance of counsel and prosecutorial misconduct are not particularly factually or legally complex. Although his claims are fatally flawed as discussed more fully below, those flaws are not the result of inherent complexity or the absence of counsel. Because Burtton has demonstrated his

"ability both to investigate and to articulate his claims without court appointed counsel," *McCall v. Benson*, 114 F.3d 754, 756 (8th Cir. 1997), his request for counsel is denied.

### D.   Ineffective Assistance of Counsel

The Sixth Amendment to the United States Constitution guarantees Burtton the right to effective assistance of counsel at all critical stages of his criminal proceeding, including plea negotiations and sentencing. *See* U.S. Const. amend. VI; *Lee v. United States*, 582 U.S. 357, 363 (2017). Burtton alleges Tasset was unconstitutionally ineffective in his case.

In particular, he argues Tasset (1) improperly advised him "to plead guilty to a charge unsupported by the evidence," (2) failed to attempt to withdraw Burtton's guilty plea as instructed, (3) failed to "present exculpatory evidence (lab and expert reports)," (4) misrepresented "the steps taken regarding the expert report," (5) ineffectively advised him to plead guilty to conspiring to distribute a fentanyl analogue, and (6) told him "the substance would be changed to fentanyl in the charging documents, which did not happen." As he sees it, Tasset's advice and purported mishandling of the evidence he obtained indicating the drug he distributed was fentanyl not an analogue deprived Burtton not only of his only viable defense but also "the right to make an informed decision about pleading guilty versus going to trial." He contends that but for Tasset's "erroneous advice, [he] would have proceeded to trial."

"[T]o prevail on his ineffective-assistance-of-counsel claims, [Burtton] must satisfy the two-part test established by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984)." *Jackson v. United States*, 956 F.3d 1001, 1006 (8th Cir. 2020). First, he "must show that '[Tasset's] performance was so deficient as to fall below an objective standard of reasonable competence.'" *Id.* (quoting *Toledo v. United States*, 581 F.3d 678, 680 (8th Cir. 2009)). In evaluating counsel's performance, the Court is "highly deferential" and indulges "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. The Court must make "every effort . . . to eliminate the distorting effects of hindsight, to reconstruct the

6

circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* Tasset's performance is not deficient unless he "made errors so serious that counsel was not functioning as the 'counsel'" that the Sixth Amendment guarantees. *Dat v. United States*, 920 F.3d 1192, 1194 (8th Cir. 2019) (quoting *White v. Dingle*, 757 F.3d 750, 752-53 (8th Cir. 2014)).

Second, if Burtton proves deficiency, he "must still show that [Tasset's] deficient performance prejudiced him." *Jackson*, 956 F.3d at 1006. Defendants generally prove prejudice by showing "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694 (explaining that "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome").

"When a defendant alleges his counsel's deficient performance led him to accept a guilty plea rather than go to trial," however, the Court must "instead consider whether the defendant was prejudiced by the 'denial of the entire judicial proceeding . . . to which he had a right.'" *Lee*, 582 U.S. at 364 (quoting *Roe v. Flores-Ortega*, 528 U.S. 470, 483 (2000)). In that vein, the Court analyzes whether the defendant has shown "reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 364-65 (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)).

Burtton struggles with both *Strickland* prongs. To start, the Court sees no deficiency in Tasset's performance in this case. *See, e.g.*, *Harrington v. Richter*, 562 U.S. 86, 111 (2011) (recognizing "it is difficult to establish ineffective assistance when counsel's overall performance indicates active and capable advocacy"). The undisputed record indicates that Tasset identified a potential issue with the substance seized from Burtton on February 15, 2023. The government charged Burtton with distributing 100 grams or more of a fentanyl analogue, which subjected him to a 15-year mandatory minimum given Burtton's criminal history.

Tasset retained an expert chemist who opined the substance seized was not a fentanyl analogue. As Tasset notes in his sworn affidavit, the fentanyl versus fentanyl analogue "issue was important in Burtton's case because he would have to be found responsible for much more 'regular' fentanyl (400 grams or more) than 'analog' fentanyl (100 grams or more) to get the 15-year mandatory minimum he originally faced." Tasset explained to Burtton the best-case scenario given the evidence against him and his prior serious drug felony "was a ten-year sentence." Burtton understood.

During plea negotiations, Tasset raised the issue with the government and provided a copy of the defense's expert report. Though the government was not inclined to agree with the report, it agreed—based on what it calls the "dueling experts"—to allow Burtton to plead guilty to an information charging a lower amount of fentanyl analogue. That agreement left him subject to a lower mandatory minimum—10 years rather than 15 years. Tasset recommended that Burtton plead guilty and argue for the 10-year mandatory minimum at sentencing. According to Tasset, he fully explained the situation to Burtton, who then knowingly pleaded guilty and eventually got the sentence he requested.

By Burtton's own admission, Tasset did not ignore the potential charging issue, he investigated it, obtained valuable evidence, and turned the issue to Burtton's advantage. Tasset's detailed account of his actions in that regard is fully consistent with the written plea agreement and Burtton's extensive plea colloquy. Tasset credibly contends the plea negotiations "saved Burtton at least 5 years imprisonment."

Despite achieving what Tasset reasonably calls the best-case scenario, Burtton now asserts that he only agreed to plead guilty based on Tasset's assurance that the charge against him was going to be amended after the change-of-plea hearing. He summarily contends he would rather have gone to trial.[2]

---

[2]In his reply, Burtton contends, "The fact that the plea reduced [his] sentencing exposure relative to the original analogue indictment does not erase constitutional error if

8

Those "*post hoc* assertions" are inconsistent with Burtton's sworn statements to the Court during his extensive plea colloquy. *Lee*, 582 U.S. at 369 ("Courts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies. Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences."); *accord Voytik v. United States*, 778 F.2d 1306, 1308 (8th Cir. 1985) (explaining a defendant's sworn statements in open court "carry a strong presumption of verity and pose a 'formidable barrier in any subsequent collateral proceedings'" (quoting *Blackledge v. Allison*, 431 U.S. 63, 74 (1977))).  Burtton said absolutely nothing about his purported understanding of the charges or his expectation of amended documents either during his plea or at sentencing.  He had several opportunities to object or tell the Court he wanted to withdraw his guilty plea but didn't.  His silence speaks volumes.

But even if the Court assumes Burtton's statements about Tasset's alleged errors are true, his ineffective-assistance claims still fail.  *See Strickland*, 466 U.S. at 694; *Apfel*, 97 F.3d at 1076 ("Because the failure to establish prejudice can be dispositive of a case, we need not address the reasonableness of the attorney's behavior if the movant cannot prove prejudice.") (internal citation omitted).  Put simply, Burtton has not shown a "reasonable probability that, but for" those alleged "errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59.

To the contrary, Burtton admits his prospects at trial were not good—admitting his "only viable defense was that [he] was charged with the wrong controlled substance."  "A defendant without any viable defense will be highly likely to lose at trial.  And a defendant facing such long odds will rarely be able to show prejudice from accepting a guilty plea that offers him a better resolution than would be likely after trial." *Lee*, 582 U.S. at 367

---

the plea was induced by counsel's deficient performance and if [his] decision to plead guilty was not knowing and voluntary."  The argument is unavailing.

(recognizing "defendants obviously weigh their prospects at trial in deciding whether to accept a plea").

Burtton was caught red-handed with a large quantity of illegal drugs as a result of a coconspirator who was cooperating with the government. He offers no colorable defense for his criminal conduct. "Where a defendant has no plausible chance of an acquittal at trial, it is highly likely that he will accept a plea if the Government offers one." *Id.* Such was the case here.

Though he now apparently regrets it, Burtton never really articulates why he would have preferred to go to trial or what he would have accomplished by doing so. *See Hill*, 474 U.S. at 59 (focusing on the defendant's contemporaneous decision making). He also simply ignores Tasset's sound advice that the government "could simply add 'regular' fentanyl to his charges should he choose to proceed to trial using the 'not analog' defense" and "that the mandatory minimum penalty would be the same either way." *See Lee*, 582 U.S. at 367 ("The decision whether to plead guilty also involves assessing the respective consequences of a conviction after trial and by plea.").

In these circumstances, *see Roe v. Flores-Ortega*, 528 U.S. 470, 485 (2000) ("As with all applications of the *Strickland* test, the question whether a given defendant has made the requisite showing will turn on the facts of a particular case."), Burtton has not established ineffective assistance of counsel, *see Hill*, 474 U.S. at 58-60; *Hudson v. United States*, 139 F.4th 1011, 1014-15 (8th Cir. 2025)

### E.      Prosecutorial Misconduct

Burtton directs the rest of his ire to the prosecutor in his case. In particular, he contends the prosecutor's reliance on false and misleading evidence about the substance he distributed violated his due-process rights. Along those lines, he alleges prosecutorial

misconduct and a violation of *Brady v. Maryland*, 373 U.S. 83 (1963), related to that evidence. Those claims fail too.

Bartton cites *Brady* but fails to identify any hidden exculpatory evidence the government unlawfully withheld from him. *See id.* at 87. He fixates on the difference of opinion on the illegal substance seized from him, but he and his counsel were aware of the disagreement upon obtaining an expert report and used it to negotiate more-favorable plea terms. Burtton's knowing and voluntary guilty plea—as found by this Court—ended any need to definitively resolve the question. *See United States v. Turner*, 94 F.4th 739, 742 (8th Cir. 2024) ("A guilty plea waives all defects except those that are 'jurisdictional.'" (quoting *United States v. Todd*, 521 F.3d 891, 895 (8th Cir. 2008))); *United States v. Thomason*, 991 F.3d 910, 914 (8th Cir. 2021) (rejecting the "argument that alleged prosecutorial misconduct justifies vacating his conviction" because the defendant "waived all non-jurisdictional claims arising from events before the plea" by pleading guilty).

"To succeed on a claim of prosecutorial misconduct," Burtton "must show that flagrant misconduct caused substantial prejudice to his rights." *Thomason*, 991 F.3d at 914. Even if timely and not waived, Burtton's claims do not meet this standard. *See id.*; *cf. United States v. Lazzaro*, 129 F.4th 514, 532 (8th Cir. 2025) ("The fact that he knew the evidence existed demonstrates his motion's tardiness."); *Anderson v. United States*, 25 F.3d 704, 706 (8th Cir. 1994) (explaining § 2255 is not a substitute for direct appeal).

Prosecutors "may take action to punish a defendant for committing a crime," *United States v. Campbell*, 410 F.3d 456, 461 (8th Cir. 2005), and have broad discretion "in performing their duties," *United States v. Williams*, 793 F.3d 957, 963 (8th Cir. 2015). As "long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion." *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978).

Bartton's allegations about "the true nature" of the illegal drugs seized from him do not establish an abuse of that discretion or any other misconduct by the prosecutor in this case. *See id.*; *Hollis v. United States*, 796 F.2d 1043, 1046 (8th Cir. 1986) (concluding "vague and conclusory allegations are not sufficient to state a ground for relief under 28 U.S.C. § 2255").

### F.    No Certificate of Appealability

Burtton cannot appeal the denial of his § 2255 motion without a certificate of appealability. 28 U.S.C. § 2253(c)(1)(B); Fed. R. App. P. 22(b). The Court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Burtton can make such a showing "by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Because he hasn't, the Court will not issue a certificate of appealability.

For the foregoing reasons,

IT IS ORDERED:

1.    Defendant Taft Burtton's *pro se* (1) Motion for Evidentiary Hearing and for Appointment of Counsel (Filing No. 163), (2) Motion for Limited Discovery (Filing No. 164), (3) Motion for Leave to Proceed In Forma Pauperis (Filing No. 165), (4) Motion to Preserve and Produce Courtroom Recording for January 3, 2025, Sentencing Proceeding (Filing No. 167), and (5) Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Filing No. 153) are all denied.

2.    No certificate of appealability will issue.

3.    The Court will enter a separate judgment in accordance with this Memorandum and Order.

4.    The Clerk of Court is directed to mail a copy of this Memorandum and Order and the Judgment to Burtton at his address of record within the Bureau of Prisons.

Dated this 17th day of April 2026.

BY THE COURT:

Robert F. Rossiter, Jr.
Chief United States District Judge